UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CARLOS and CAROL MARTINO,      :
individually and on behalf of  :    HONORABLE JOSEPH E. IRENAS
all those similarly situated,  : CIVIL ACTION NO. 09-011 (JEI/JS)
                               :
                Plaintiffs,    :            **OPINION**
                               :
        v.                     :
                               :
EVERHOME MORTGAGE; and         :
COOPER PERSKIE LEVENSON APRIL  :
NIEDELMAN & WAGENHEIM, P.A.,   :
                               :
                Defendants.    :


**APPEARANCES:**

LAW OFFICE OF LEWIS G. ADLER
By:  Roger C. Mattson, Esq.
     Lewis G. Adler, Esq.
26 Newton Avenue
Woodbury, New Jersey 08096
     Counsel for Plaintiffs

ARCHER & GREINER, P.C.
By:  Sean T. O'Meara, Esq.
One Centennial Square
Haddonfield, New Jersey 08033
     Counsel for Defendant EverHome Mortgage Company

COOPER LEVENSON APRIL NIEDELMAN & WAGENHEIM, P.A.
By:  Fredric L. Shenkman, Esq.
1125 Atlantic Avenue, 3rd Floor
Atlantic City, New Jersey 08401


**IRENAS**, Senior District Judge:

    This case is substantially similar to a case the Court

recently addressed: *Rivera v. Washington Mutual, et al.*, ___ F.

Supp.2d ___, 2009 WL 2001175 (D.N.J. July 10, 2009) (Irenas,

S.D.J.).  Plaintiffs (and putative class representatives) Carlos and Carol Martino, like the Riveras, assert that the defendants, a mortgage lender and its law firm, charged and collected "various fees not authorized by the [mortgage] loan documents or applicable law" and "overcharged defaulting borrowers of residential mortgages." (Compl. ¶ 40)  The similarity of issues and timing of these cases is no accident.  As the Court observed in *Rivera*, the same attorney filed both cases on the same day, and the vast majority of the allegations in each case are identical.  Thus, it is fair to say, as the Court did in *Rivera,* that the Complaint in this case is "hopelessly muddled, mistated and mangled."  2009 WL 2001175 at *1.  But as in *Rivera*, the Court has made every effort to discern the alleged facts of the case and then rule on the pending Motions to Dismiss as set forth below.[1]

## I.

The Court will first summarize the sparse factual "background" as alleged in the Complaint.  Then the Court will attempt to fill the gaping holes in the background factual

---

[1] As discussed length in *Rivera,* the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  The Court hereby incorporates by reference *Rivera's* discussion of this Court's CAFA jurisdiction, as well as the discussion of the *Rooker-Feldman* doctrine, *see* 2009 WL 2001175 at *5-6, *7 n.17, without repeating it here.

allegations with the facts it has gleaned from the public documents Defendants have relied upon in their Motions to Dismiss.[2]

*The Complaint's Allegations*

Plaintiffs executed the mortgage and note at issue in 1982. (Compl. ¶ 31)  Clarion Mortgage Company, a non-party to this suit, originated the loan.  (Id.)

On August 26, 1996, Defendant Cooper Perskie Levenson April Niedelman & Wagenheim, P.A.[3] ("Cooper") filed a foreclosure action against Plaintiffs on behalf of its client, EverHome Mortgage Company ("EverHome").[4]  (Compl. ¶ 32)  EverHome is the successor in interest to Clarion Mortgage Company.  (Id.)

At some unspecified time "after Plaintiffs were served with the foreclosure complaint," Plaintiffs "filed for Chapter 13 Bankruptcy."  (Compl. ¶ 33)[5]

---

[2]  The Court takes judicial notice of the public documents from Plaintiffs' prior bankruptcy cases discussed *infra*.

[3]  Defendants assert the correct name is Cooper Levenson April Niedelman & Wagenheim, P.A.

[4]  The judgment of foreclosure attached to the Complaint (Compl. Ex. A) indicates that Cooper filed the foreclosure action on behalf of Alliance Mortgage Company ("Alliance").  Alliance later changed its name to EverHome.

[5]  As will be discussed *infra*, Plaintiffs filed for chapter 13 bankruptcy on three separate occasions: May 8, 1997; March 11, 1998; and August 6, 2001.  The Complaint makes no reference to any particular bankruptcy case.

The Complaint next alleges that a final judgment of foreclosure was entered against Plaintiffs on June 26, 2001 (Compl. ¶ 34)-- almost five years after the foreclosure case began, and approximately four years after Plaintiffs' first bankruptcy case began.  The Complaint makes no attempt to account for what transpired in the intervening years.

The Complaint next alleges that on December 16, 2004, "Plaintiffs received a payoff from Cooper on behalf of EverHome in the sum of $46,678.27."  (Compl. ¶ 35)  The Complaint does not account for the three and a half years that passed between the final judgment of foreclosure and the payoff statement.

Plaintiffs "paid the sums demanded in full on or about January 27, 2005."  (Compl. ¶ 38)

*Additional Facts Gleaned from Bankruptcy Court Documents*

Approximately nine months after the foreclosure action was instituted, Plaintiffs filed their first chapter 13 petition. (O'Meara Cert. Ex. A)  The case was dismissed on October 9, 1997. (Id. Ex. B)  The Court has no further information on this first bankruptcy case.[6]

---

[6]  For clarity only, the Court notes that EverHome asserts that Plaintiffs have actually filed for bankruptcy a total of five times.  The first two allegedly occurred in 1987 and 1992, although EverHome has not put forth any documentation to support this contention.  Thus, it may be that what the Court refers to as Plaintiffs' "first bankruptcy" is actually their third bankruptcy in the chronological order of events.  But, because the 1987 and

On March 11, 1998, Plaintiffs filed their second chapter 13 bankruptcy petition.  (O'Meara Cert. Ex. C)  In late May, 1999, the bankruptcy court confirmed the chapter 13 plan, which required Plaintiffs to pay 45 monthly payments of $1,420.00 to the bankruptcy trustee and attorney's fees in the amount of $1,100.00.  (Id.)  It may be inferred from the bankruptcy court docket that Alliance Mortgage Company ("Alliance") (which later changed its name to EverHome Mortgage Company) filed a proof of claim (id.), although that proof of claim is not included in the documents before the Court at this time.[7]

Approximately ten months after the chapter 13 plan was confirmed, Alliance moved for relief from the automatic stay.  (O'Meara Cert. Ex. C)  According to the bankruptcy court docket, the motion was resolved through a "consent order curing arrears" (id.), but the actual consent order is not included in the record currently before the Court.

Three months after the consent order was entered, Plaintiffs moved to reinstate the automatic stay.  That motion was granted, over Alliance's objection, on October 17, 2000.  (O'Meara Cert. Ex. C)

---

1992 bankruptcies do not appear to be relevant to the present case, the Court will refer to the 1997 bankruptcy as the first bankruptcy.

[7]  Union Planters Mortgage is also identified on the bankruptcy court docket as a creditor of Plaintiffs.  It is not clear what claim Union Planters had against Plaintiffs.

In December of that same year, upon the Trustee's application, the bankruptcy court entered an Ex Parte Order Dismissing the Case. (O'Meara Cert. Ex. C) The case was closed on January 31, 2001. (Id.)

With no more automatic stay in place, Alliance obtained a final judgment of foreclosure by default against Plaintiffs on June 26, 2001. (Compl. Ex. A)

On August 6, 2001, Plaintiffs filed their third chapter 13 petition. While EverHome (still named Alliance at the time) asserts that it filed a proof of claim in this third bankruptcy, the proof of claim they provide the Court was submitted by Union Planters Mortgage. (O'Meara Cert. Ex. E) EverHome does not explain this discrepancy.

Prior to the confirmation of the chapter 13 plan, Plaintiffs moved to reduce the amount of Alliance's secured claim. (O'Meara Cert. Ex. F) The bankruptcy court docket indicates that this motion was "denied." (Id. Ex. D)

Plaintiffs' chapter 13 plan was confirmed on May 8, 2002. (O'Meara Cert. Ex. D) It provided for 52 monthly payments of $1,119, "plus $6,720 paid," and attorneys fees of $1,400.00. (Id.)

On May 28, 2003, Plaintiffs moved to modify Alliance's claims. (O'Meara Cert. Ex. D) In the motion, Plaintiffs asserted, among other things, that Alliance's proof of claim was

6

"erroneous" explaining, "[t]here are legal fees and foreclosure costs of $2,110.90, which [debtors] question as being extremely high, especially since previous proofs of claim have also included legal fees and foreclosure costs."  (O'Meara Cert. Ex. F)  The docket indicates, however, that the motion was ultimately "denied for lack of prosecution."  (Id. Ex. D)

On August 28, 2003, the bankruptcy court confirmed Plaintiffs' modified chapter 13 plan which provided for 36 monthly payments of $930.00 and no attorney's fees.  (O'Meara Cert. Ex. D)

On May 21, 2004, the bankruptcy court granted the Trustee's motion to dismiss the case.  (O'Meara Cert. Ex. D)  The Trustee's final report indicates that prior to the dismissal, Plaintiffs had paid Alliance $15,384.19, which was the entire amount of Alliance's allowed claim.  (Id. Ex. I)


The Complaint asserts the following claims against EverHome, all arising out of the alleged unauthorized fees it charged and various other overcharges: (1) breach of contract; (2) intentional misrepresentation; (3) negligent servicing of the loan;[8] (4) breach of the duty of good faith and fair dealing; (5) unjust enrichment; (6) "deceptive collection of fees"; (7)

---

[8]  The Complaint breaks down the negligence claim into two separate counts: one against EverHome (Count 3) and one against Cooper (Count 4).

7

violation of the Fair Foreclosure Act, N.J.S.A. 2A:50-57(b)(3);
(8) violation of New Jersey Court Rules 4:42-9(a)(4) and 4:42-
10(a); (9) violation of New Jersey's Consumer Fraud Act, N.J.S.A.
56:8-2 *et seq.*; and (10) violation of New Jersey's Truth In
Consumer Contracts, Warranty and Notice Act, N.J.S.A. 56:12-14 *et
seq.* Cooper is a Defendant to claims 3 through 5 only.

Plaintiffs propose a statewide class consisting of:

(1) individuals who have had home loans held or serviced
by the Defendant, EVERHOME in the State of New Jersey
from sixteen years prior to the filing of the complaint
through the date of class certification; and (2) who
received a payoff or reinstatement statement from the
Defendant whose home loan was in default; (3) and who
were charged attorneys fees and/or other costs which were
in excess of the amount actually incurred and/or in
excess of the amount allowed by law.
    a) A subclass exists for claims from six years prior
to the filing of the complaint through the date of class
certification which includes claims under the New Jersey
Consumer Fraud Act and New Jersey Truth-in Consumer
Contracts, Warranty and Notice Act.

The Plaintiff[s] propose a second class as (1)
individuals who have had defaulted home loans in which
the Defendant, COOPER has represented the holder of the
mortgage in the State of New Jersey from six years prior
to the filing of the complaint through the date of class
certification, (2) individuals who received a payoff or
reinstatement statement from the Defendant whose home
loan was in default; (3) individuals who were charged
attorneys fees and/or other costs which were in excess of
the amount actually incurred and/or in excess of the
amount allowed by law.

(Compl. ¶¶ 15-16) (caps in original)[9]

---

[9] The statewide class proposed in this case is virtually
identical to the proposed statewide class in *Rivera*. *See* 2009 WL

As previously noted, EverHome and Cooper presently move to dismiss the Complaint in its entirety.  For the reasons that follow, their motions will be granted.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).  While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

201175 at *4-5.  *Rivera* also proposed a nationwide class which is not proposed in this case.

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## III.

As done in *Rivera*, the Court begins with the wrongful conduct alleged in the Complaint:

> At all times relevant hereto, EVERHOME and COOPER have engaged in a uniform scheme and course of conduct to inflate their profits by charging and collecting various fees not authorized by the loan documents or applicable law.  The components of this scheme involve common tactics in which defendants have been overcharging defaulting borrowers of residential mortgages in the following manner, including but not limited to:
>
> > a)  they charged attorneys fees in both foreclosure and bankruptcy which were in excess of those allowed by statute and court rule. Specifically, the Defendants demanded attorneys fees in the amount of $6,254 when the court rule R. 4:42-9 limits the amount to $424.93 in the instant case.
> >
> > b) recording fees charged were excessive of the actual fee; i.e. to file the vacation of the final judgment there is no fee but Defendants charged $40.00
> >
> > c) In addition the Plaintiffs contend that the Defendants overcharged the class as follows:
> >
> > > i.  over charging [sic] of sheriff's commissions by failing to properly credit deposits; demanding $1,922.73 when only $1,170.91 was due.
> > >
> > > ii.  charging excessive interest by continuing to charge the contract rate after a judgment of foreclosure was entered when

10

> entitled to the judgment interest rate; in
> the instant case, EVERHOME charged $1,103.38
> contract interest twice. Demanding post
> judgment interest of $7,160.79 when less was
> due.

(Compl. ¶ 40)

While the Complaint generally asserts that Defendants
charged excessive attorneys fees in both foreclosure and
bankruptcy (see Compl. ¶ 40(a)), the Court does not read the
Complaint as attacking fees assessed in bankruptcy. First, the
specific allegations in ¶ 40(a) reference New Jersey Court Rule
4:42-9, which is only applicable in New Jersey State foreclosure
actions. The allegations do not identify any statute or rule
governing attorneys fees in bankruptcy actions. Second, as
already explained, Plaintiffs filed for bankruptcy three separate
times during the relevant time period, yet the Complaint only
makes one vague, passing reference to Plaintiffs filing for
bankruptcy sometime after they were served with the foreclosure
complaint. Accordingly, even if the Court were to interpret the
Complaint as attacking attorneys fees assessed in any or all of
the bankruptcy cases, the Complaint is entirely too vague to
sufficiently put Defendants (or the Court for that matter) on
notice as to the nature of the claim(s).

Thus, the Court does not interpret the Complaint as
asserting claims based on attorneys fees assessed in Plaintiffs'
bankruptcy cases. The Court now turns to Defendants' arguments

addressing the wrongful conduct actually alleged in the Complaint, at least insofar as the Court is able to decipher the allegations.

### A.

_____Like _Rivera,_ the documents attached to the instant Complaint demonstrate that there was no violation of New Jersey Court Rule 4:42-9.[10]  Accordingly, Count 9 (entitled "New Jersey State Court Rule") fails to state a claim.[11]  It follows that all claims based on the alleged violation of Rule 4:42-9, namely, at least a portion of the intentional misrepresentation claim, the Fair Foreclosure Act claim (Count 8), and the Consumer Fraud Act claim (to the extent it is based on alleged violations of Rule 4:42-9 and the Fair Foreclosure Act[12]), also fail.

The foreclosure judgment, Exhibit A to the Complaint,

---

[10]  Plaintiffs, in opposition to Cooper's Motion to Dismiss, argue that Defendants violated New Jersey Court Rule 4:42-10(a) in addition to Rule 4:42-9.  However, the Complaint makes no reference to Rule 4:42-10, therefore the Court need not address that issue.

[11]  Alternatively, as this Court held in _Rivera_, 2009 WL 2001175 at *8 n.18, there is no private right of action under this Rule.

[12]  Count 11 is entitled "New Jersey Consumer Fraud Act," but violations of the CFA are also alleged in Counts 7 (entitled "unfair and deceptive collection of fees"); 8 (entitled "Fair Foreclosure Act"); 9 (entitled "New Jersey State Court Rule"); and 10 (entitled "excessive taxed costs in violation of state statutes").

requires Plaintiffs to pay $477.89 in attorneys fees.  This calculation of fees is correct.  Rule 4:42-9(a)(4) instructs:

> on all sums adjudged to be paid the plaintiff amounting to $5,000 or less, at the rate of 3½%, provided, however, that in any action a minimum fee of $75 shall be allowed; upon the excess over $5,000 and up to $10,000 at the rate of 1½%; and upon the excess over $10,000 at the rate of 1%, provided that the allowance shall not exceed $7,500. . . . In no case shall the fee allowance exceed the limitations of this rule.

The Rule applies in this case as follows: 3.5% of the first $5,000 equals $175; 1.5% of the next $5,000 equals $75; and 1% of the remaining judgment, $22,789.13, equals $227.89; $175 + $75 + $227.89 = $477.89.  Indeed, Plaintiffs assert in their brief that, "[u]nder the Court Rule, EverHome was limited to a total of $477.89 in attorneys' fees."  (Pls' Br. In Opposition to Cooper's Motion, p. 14)

The Complaint, however, asserts that Defendants demanded attorneys fees in the amount of $6,254, but this allegation alone is insufficient to plead a violation of Rule 4:42-9.  The $6,254 figure apparently comes from Cooper's draft payoff statement of December 15, 2004, attached as Exhibit B to the Complaint.  However, nothing in the statement suggests that the $6,254 figure consists solely of the attorneys' fees incurred in the foreclosure action.

The statement breaks down the $6,254 in "legal fees" as follows:

```
"Billed to client        $1,690.00"

"Flat Fee                 $1,000.00"

"Attorney Fee             $1,500.00"

"Proforma [sic]           $2,064.00"
```

(Compl. Ex. B)  Given that the draft payoff statement was created approximately three and a half years after the foreclosure judgment was entered, and after lengthy litigation in the bankruptcy court, it is simply not plausible that the $6,254 in "legal fees" demanded in the draft payoff statement consisted solely of the attorneys fees incurred in the foreclosure action. Accordingly, Count 9 of the Complaint will be dismissed.

To the extent that Plaintiffs' intentional misrepresentation claim (Count 2) is based on the above-discussed allegations, it also must fail.  Merely pleading that EverHome sought $6,254 in "legal fees" in the draft payoff statement does not suffice to state a claim that EverHome intentionally misrepresented the attorneys fees due pursuant to Rule 4:42-9.

As to the Fair Foreclosure Act claim (Count 8), that statute merely states that, in order to cure a default, debtors shall "pay or tender court costs, if any, and attorneys' fees in an amount which shall not exceed the amount permitted under the Rules Governing the Courts of the State of New Jersey."  N.J.S.A. 2A:50-57(b)(3).  Because Plaintiffs' own submissions demonstrate that they did not pay fees that exceeded the limits established

14

by Rule 4:42-9, there can be no Fair Foreclosure Act claim, and Count 8 will be dismissed.[13]

Lastly, as there has been no violation of New Jersey Court Rules or the Fair Foreclosure Act, there can be no Consumer Fraud Act claim based on any such violations[14]; therefore the Consumer Fraud Act claim, insofar as based on alleged violations of Rule 4:42-9 or the Fair Foreclosure Act,[15] will also be dismissed.

---

**B.**

The Court next addresses the remainder of the intentional misrepresentation claim (Count 2) and the remainder of the CFA claim (Count 11) which is apparently based on Count 7, alleging

---

[13] Alternatively, the Fair Foreclosure Act claim must be dismissed because the Act creates no private right of action. *Rivera,* 2009 WL 2001175 at *8 n.19.

[14] "In analyzing claims under the CFA, . . . there are only three elements required for the prima facie proofs: 1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge*, *Inc.*, 197 N.J. 543, 557 (2009). The Court has held that Plaintiffs have not pled a violation of New Jersey Court Rule 4:42-9 or the Fair Foreclosure Act, therefore they have not pled the first element of their prima facie CFA case.

[15] The Complaint labels Count 11 as the Consumer Fraud Act claim, but also asserts violations of the CFA in Counts 7 (entitled "unfair and deceptive collection of fees"); 8 (entitled "Fair Foreclosure Act"); 9 (entitled "New Jersey State Court Rule"); and 10 (entitled "excessive taxed costs in violation of state statutes"). To the extent any of these Counts are based on alleged violations of Rule 4:42-9 or the Fair Foreclosure Act, they will be dismissed.

"unfair and deceptive assessment and collection of fees" in violation of the Federal Trade Commission Act, 15 U.S.C. § 45(a).[16]

As already explained, the attorneys fee assessed pursuant to New Jersey Court Rule 4:42-9 was correct, therefore there can be nothing unfair or deceptive about that fee as a matter of law; nor can such allegations support a claim for intentional misrepresentation.

To the extent these claims are based on the other alleged wrongful conduct in paragraph 40 of the Complaint-- namely, that EverHome: (1) overcharged recording fees; (2) overcharged sheriff's commissions; and (3) double charged the contract interest rate (see Compl. ¶ 40(b), (c)(i), (c)(ii), quoted *supra* at p. 10)-- these allegations are insufficient as a matter of law, as explained below.

The alleged wrongful conduct is apparently derived from discrepancies between EverHome's draft payoff statement (Compl. Ex. B) and the "Statement of Sale" from the Gloucester County

---

[16]   The statute declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a)(1).
    The Complaint does not assert a claim arising under 15 U.S.C. § 45(a), and even if it did, there is no private right of action under this statute.  *See American Airlines v. Christensen*, 967 F.2d 410 (10th Cir. 1992); *Fulton v. Hecht*, 580 F.2d 1243 (5th Cir. 1978)*, cert. denied,* 440 U.S. 981 (1979); *Alfred Dunhill, Ltd. v. Interstate Cigar Corp.,* 499 F.2d 232 (2d Cir. 1974); *Holloway v. Bristol-Myers Corp.,* 485 F.2d 986 (D.C. Cir. 1973)*; Carlson v. Coca-Cola Co.,* 483 F.2d 279 (9th Cir. 1973).

Sheriff's Office (Compl. Ex. C).  For example, the draft payoff statement lists $7,160.79 in "Post Judgment Interest" and the Statement of Sale lists "Contract Interest on $30,217.91 at 15.5% from 4/1/2001 to 6/26/2001" as $1,103.38.  The Complaint juxtaposes these two figures ($7,160.79 and $1,103.38) and then concludes that Plaintiffs were overcharged (Compl. ¶ 40(c)(ii)).  But these two figures are two unrelated charges, as the documents themselves demonstrate.  Post-judgment interest is, by definition, interest charged on the foreclosure judgment, whereas the contract interest is the interest charged prior to the foreclosure judgment, while the mortgage is in default.  Indeed, the Statement of Sale indicates that the contract interest rate was charged until June 26, 2000 (Compl. Ex. C), which is the date of the foreclosure judgment (see Compl. Ex. A).  Thus, these two figures do not, and cannot, support any inference that Plaintiffs were charged the contract interest rate twice because the $7,160.79 post-judgment figure, by definition, excludes the $1,103.38 pre-judgment figure.  Thus, Plaintiffs have simply failed to adequately plead that they were overcharged the contract rate of interest, and all claims based on this theory of liability necessarily fail.

As to "recording fees" (Compl. ¶ 40(b)), the allegations make no sense.  Apparently relying on a line item from the draft payoff statement (Compl. Ex. B) which reads, "Vacate Final

Judgment $40.00," Plaintiffs allege that the "recording fees charged were excessive of the actual fee; i.e. to file the vacation of the final judgment there is no fee but the Defendants charged $40.00." (Compl. ¶ 40(b))  However, the draft payoff statement neither contains the words "recording fee" anywhere, nor suggests that the $40.00 figure is a recording fee.  The Complaint fails to identify any connection between "recording fees" and the "vacation of the final judgment."  Such allegations are insufficient to state a claim for overcharging of a recording fee, and all claims based on that alleged conduct must be dismissed. *See Iqbal*, 129 S. Ct. at 1950 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)).

Lastly, with regard to the sheriff's commission charge, again, the Complaint merely cherry-picks two figures out of the numerous items listed in the draft payoff statement and the Statement of Sale, and concludes that the disparity between the two figures must be an overcharge.  Specifically, the payoff statement lists $1,922.73 in "Sheriff's Cost/Commission" but the Statement of Sale lists "total [sheriff's] fees and comm" as

18

$1,170.91.[17]  However, this facial discrepancy between the two documents, without more, is insufficient to state a claim. *See Iqbal*, 129 S. Ct. at 1950.

To reiterate, with respect to all of the alleged wrongful conduct, the Complaint does nothing more than plead discrepancies between two documents from two different sources.  The mere fact of a discrepancy is insufficient to support an inference of unlawful conduct by Defendants.  Accordingly, all claims based on this alleged conduct must be dismissed.

## C.

Count 10 is entitled "Excessive Taxed Costs in Violation of State Statutes."  It is nothing more than a laundry list of various statutory fees that may be charged in the New Jersey State foreclosure process, along with a generic allegation that Defendants' charges were in excess of those allowed by law.  None of the statutory sections listed apparently have any connection with the wrongful conduct identified in paragraph 40 of the Complaint.  Accordingly, Count 10 will be dismissed for failure to plead any facts in support of the claim.

---

[17]  Plaintiffs assert in their brief that "Cooper charged a total of $1320.40 for [s]heriff's commission and charges.  The actual charge by the [s]heriff was only $1,170 an overcharge of $150.40."  (Pls' Br. In Opposition to Cooper's Motion, p. 18)  Plaintiffs' counsel is apparently unaware that those assertions conflict with the allegations of the Complaint.

**D.**

Count 13 asserts that EverHome violated New Jersey's Truth in Consumer Contract, Warranty & Notice Act ("TCCWNA").  This count also fails to state a claim.

The TCCWNA provides in relevant part,

> No seller, lessor, creditor, lender or bailee shall in the course of his business . . . enter into any written consumer contract . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the . . . the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S.A. 56:12-15.  A person who violates the TCCWNA is liable for a $100 civil penalty or actual damages, at the election of the consumer.  N.J.S.A. 56:12-17.

Assuming that the mortgage and note are "consumer contracts" to which the TCCWNA applies, Plaintiffs have not identified which provisions of either document allegedly violate a clearly established right of Plaintiffs or responsibility of EverHome.

Accordingly, the TCCWNA claim will be dismissed.

**E.**

The last remaining claim against EverHome only is Count 1, alleging breach of contract.  However, neither the Complaint, nor Plaintiffs' brief in opposition to EverHome's motion, identify the provisions Plaintiffs assert were breached.  Plaintiffs'

brief merely asserts, "[i]n the instant case the loan documents provide the contract.  The fact that the Defendant overcharged the Plaintiffs is a breach of the contract.  As noted above, the amount of the fees to be allowed is capped by court rule."  (Pls' Br. at 23)

The only "court rule" allegedly violated in this case is Rule 4:42-9, which the Court has already eliminated as a viable claim.  Accordingly, to the extent Plaintiffs' breach of contract claim is based on that alleged wrongful conduct, it must be dismissed.  The remainder of Plaintiffs' breach of contract claim, if any, must be dismissed for failure to plead sufficient facts.[18]

## F.

Counts 3 and 4 allege negligence against EverHome and Cooper respectively.

EverHome asserts that the negligence claim against it is barred by the economic loss doctrine.  The Court agrees. Plaintiffs and EverHome were parties to a contract, namely the

---

[18]  The Court notes that EverHome explicitly argued in its moving brief that Plaintiffs failed to identify which contract provisions were allegedly breached, and that generally, the paltry factual allegations of the Complaint did not suffice to put it on notice of the nature of the claim.  These arguments notwithstanding, Plaintiffs have not moved to amend the Complaint and, except as discussed above, their opposition brief barely elaborates on the breach of contract claim.

mortgage and note.  Plaintiffs' claims are based on allegedly
improper and illegal payments arising out of the parties'
contractual relationship.

"Under New Jersey law, a tort remedy does not arise from a
contractual relationship unless the breaching party owes an
independent duty imposed by law." *Saltiel v. GSI Consultants,
Inc.*, 170 N.J. 297, 316 (2002).  If a defendant "owe[s] a duty of
care separate and apart from the contract between the parties," a
tort claim such as negligence may lie.  *Id.* at 314.  But mere
failure to fulfill obligations encompassed by the parties'
contract, including the implied duty of good faith and fair
dealing, is not actionable in tort.  *Id.* at 316-17.

Plaintiffs argue, "[t]he instant case is more than about the
loan.  The impact to [Plaintiffs] concerns their credit
worthiness, the emotional upset from the Defendants' egregious
actions and possible loss of their home in the foreclosure in
addition to any contract damages."  (Pls' Br. at 24)[19]  With
respect to EverHome's actions having an impact on Plaintiffs'
credit worthiness, the Court fails to see how such harm could
plausibly result from Defendants' alleged assessment and
collection of unauthorized fees (aside from the fact that
Plaintiffs have not pled such an injury in the Complaint).

---

[19]  The Court notes that this quote is essentially identical
to the brief quoted in *Rivera,* 2009 WL 2001175 at *10.

Plaintiffs admit that they defaulted on their mortgage.  The Court fails to see how *paying* allegedly excessive fees in connection with curing their default would negatively impact Plaintiffs' credit.  Moreover, even if EverHome's alleged actions could somehow affect Plaintiffs' credit, there are other statutory remedies available to Plaintiffs; a negligence cause of action is not the appropriate vehicle to remedy such an injury.

With regard to Plaintiffs' argument that EverHome's actions caused emotional distress, it is axiomatic that a plaintiff may not recover for emotional distress caused by a defendants' alleged breach of contract[20]; such a proposition lies at the heart of the economic loss doctrine.  EverHome owed no independent duty to Plaintiffs.  Accordingly, the negligence claim against EverHome will be dismissed.

The negligence claim against Cooper, however, is a different matter, as Plaintiffs had no contract with them.  Cooper asserts that the negligence claim against it must be dismissed because they had no duty to Plaintiffs.  The Court agrees.

While there are some circumstances where an attorney may be liable to a third-party non-client for negligence, such

---

[20]  *See* Restatement (Second) of Contracts § 353 and comment a ("Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result. . . . Damages for emotional disturbance are not ordinarily allowed.").

23

circumstances are not pled here.

In *Banco Popular North America v. Gandi*, 184 N.J. 161, 179-81 (2005), the New Jersey Supreme Court stated that an attorney may be liable to a third party when he invites that party's reliance on his work or knows or should know that the party will rely on the attorney's work.  It is simply not plausible that Cooper invited Plaintiffs to rely on their calculations, nor is it plausible that Cooper should have known that Plaintiffs would rely on their calculations.  Cooper represented a party who had been adverse to Plaintiffs for over eight years-- first in the foreclosure action and then in Plaintiffs' subsequent bankruptcies.[21]

Cooper had no duty to Plaintiffs to accurately calculate any fees or costs associated with the foreclosure.  Although the judgment of foreclosure was entered by default, Plaintiffs could have hired their own attorney to represent them in the foreclosure case, and it would have been that attorney's responsibility to identify and correct any errors.[22]

---

[21]   *See Ogbin v. Fein, Such, Kahn & Shepard, PC,* No. 08-4138, 2009 U.S. Dist. LEXIS 46954 at *9-10 (D.N.J. May 29, 2009) (Cavanaugh, D.J.) (holding that law firm who was plaintiffs' adversary in foreclosure proceeding owed no duty to plaintiffs, as law firm could not have expected that plaintiffs would rely on law firm's representations about payoff amounts).

[22]   Moreover, as already explained, no error was made in calculating the attorneys fees due in connection with the foreclosure action.

To the extent Plaintiffs' claims are based on the allegedly incorrect calculations regarding recording fees, sheriff's fees and commissions, and interest in the draft payoff statement, the same conclusion obtains.  While Cooper sent Plaintiffs the draft payoff statement itemizing the charges due and instructing how payments should be made (Compl. Ex. B), it is still not plausible that Cooper invited reliance on their calculations, nor is it plausible that Cooper should have known that Plaintiffs would rely.  The letter accompanying the draft payoff statement clearly stated, "This is an attempt to collect a debt and any information obtained will be used for that purpose."  (Id., underline in original)  Moreover, as already noted, the draft payoff statement came from the law firm representing a party who was actively participating in litigation against Plaintiffs for more than eight years.  Under these circumstances, Plaintiffs cannot pursue their negligence claim against Cooper as a matter of law.  Accordingly, the claim will be dismissed.

Count 3 fails to state a claim against EverHome.  Count 4 fails to state a claim against Cooper.  Accordingly, those counts will be dismissed in their entirety.

**G.**

25

Finally, Counts 5 and 6,[23] respectively, allege breach of the duty of good faith and fair dealing, and unjust enrichment against EverHome and Cooper.  To the extent these counts are based on the allegations in Complaint paragraph 40, the claims must be dismissed for the reasons already discussed.

Also, Counts 5 and 6 against Cooper fail for independent reasons.  With respect to the good faith and fair dealing claim, the Court holds that Cooper had no such duty to Plaintiffs.  The duty of good faith and fair dealing is an implied duty in every *contractual* relationship.  *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001) ("A covenant of good faith and fair dealing is implied in every contract in New Jersey.").[24]  However, Plaintiffs do not (and cannot) allege that they had a contractual relationship with Cooper, who was Alliance Mortgage's attorney in the foreclosure action.  Without a contract, there is no duty of good faith and fair dealing[25], therefore Plaintiffs' good faith and fair dealing claim against Cooper must be dismissed.

As to the unjust enrichment claim, Plaintiffs apparently

---

[23]   The careful reader will note that this Opinion does not discuss Count 12.  There is no Count 12 of the Complaint.  Count 13 immediately follows Count 11.

[24]   *See generally* Restatement (Second) of Contracts § 205 ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").

[25]   To the extent there may be an extra-contractual duty of good faith and fair dealing under New Jersey law, Cooper had no such duty for the reasons stated *supra* at Section IV. F.

assert that Cooper was unjustly enriched by the allegedly excessive attorneys fee assessed in the foreclosure action. However, because the Court has already determined that the fee was exactly correct under New Jersey Court Rules, Cooper's alleged retention of such a benefit cannot be unjust as a matter of law.

Accordingly, Counts 5 and 6 against Cooper will be dismissed in their entirety.

## V.

In light of the foregoing, the Court will dismiss the Complaint.  However, Plaintiffs will be granted leave to file a Motion to Amend the Complaint insofar as they wish to assert claims not considered in this opinion or claims that would not be barred by the legal holdings the Court has made herein.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (providing that plaintiffs whose claims are subject to a Rule 12(b)(6) dismissal should be given an opportunity to amend their complaints unless amendment would be inequitable or futile).  An appropriate Order accompanies this Opinion.

July 31, 2009                              s/ Joseph E. Irenas
                                        JOSEPH E. IRENAS, S.U.S.D.J.

27